ELIZABETH MAHONE, plaintiff in error, *vs.* JAMES BRYANT, defendant in error.

1. Where a written contract is described in the declaration as made with the plaintiff, it is too late, after verdict, to object that the contract produced in evidence was made with the plaintiff and others, jointly, there having been no plea in abatement for non-joinder of parties, and no objection, on the ground of variance or on any other ground, to the reception of the contract in evidence.

2. The jury are not obliged to stop precisely where the testimony becomes silent, but may go further, and from facts proven, (sometimes even from the absence of counter-evidence) may infer the existence of other facts. A verdict is compounded of evidence, law and logic.

Verdict.  Waiver.  Evidence.  Before Judge JAMES JOHNSON.   Talbot Superior Court.   September Term, 1875.

Reported in the opinion.

PEABODY & BRANNON ; WILLIS & WILLIS, for plaintiff in error.

JAMES JOHNSON ; J. M. MATTHEWS, for defendant.

BLECKLEY, Judge.

The action was by a renter against his landlady. The contract was in writing. It stipulated, among other things, that the land was to be worked, the repairing done, and the crops saved, under the superintendence of Tilman H. Mahone. The rent reserved was one-fourth of the cotton and one-third of other crops made on the premises. Nine bales of cotton were gathered, ginned and packed. The tenant got two, and the other seven were taken and sold by the superintendent. This suit was to recover the tenant's share of these seven bales or of the proceeds of their sale. The plaintiff had a verdict for $112 02, besides interest; and the defendant moved for a new trial, complaining that the verdict was contrary to law and to evidence.

1. It is insisted that the written contract, which the plaintiff produced in evidence, was not made with him alone, but with him jointly with two others, who, as well as the plaintiff and the defendant, executed and signed the writing. This is true, but we are inclined to think that, owing to the peculiar phraseology of the instrument, the plaintiff was the sole renter of the land, and entitled, severally, to all the produce, except the landlady's share reserved for rent. Taking the contract altogether, the intention seems to have been to treat the plaintiff as renter, and the other two as his helps or assistants in the cultivation, etc., their compensation being matter of arrangement between him and them. But whatever may be the proper construction of the contract in this respect, it was too late, after verdict, to make the question. There was no plea in abatement for non-joinder of the omitted parties, and the contract was admitted in evidence without objection. It should have been objected to on the ground of variance, if it were substantially different from the writing declared on, and if the defendant had wished to avail herself of that difference. She has suffered it to be sued on as a several contract and to come before the jury and remain before them as such. After verdict, she cannot be allowed to say that, al-

though she contracted wish the plaintiff, she did not contract with him only, and that his recovery is, for that reason, unwarranted.

2. Two short comings are said to be in the parol evidence; namely, as to the value, or the amount realized for the seven bales of cotton, and as to the defendant's consent to the act of Tilman H. Mahone in taking possession and making the sale. Tilman H. Mahone, introduced by the defendant as a witness, testified that nine bales of cotton, averaging about five hundred pounds, were raised on the land; that plaintiff got two bales when cotton was worth eighteen cents per pound; that he, witness, took the other seven bales and sold them; that he paid plaintiff $95 00 at one time, $115 00 at another, $30 at another, $9 00 at another, and $21 00, in cotton, at another; that he could not remember the different amounts he had paid the plaintiff out of said cotton money, but that he had paid to him the whole of it; meaning, doubtless, the whole of plaintiff's share. From this evidence, more especially when taken in connection with that of the plaintiff, that he was offered for the seven bales eighteen cents per pound, we think the jury were authorized to infer that eighteen cents a pound was its value, and that, when sold, it brought that price. The person who sold it was on the stand as a witness, and said that was the value of cotton when the plaintiff got the two bales. If the seven bales had been worth less or had sold for less, would not this witness have so testified? On the other point, that of the defendant's consent, while there was no direct proof of it, there were circumstances before the jury from which, applying the logic of experience and common sense, they might have inferred it also. Tilman H. Mahone was mentioned in the written contract as the superintendent of the farm; the defendant, the owner of the farm, was a woman bearing his name, not improbably his wife or mother; she introduced him as a witness, and if he had not been her agent to take charge of the crop and sell it, nothing would have been more natural than for her counsel to have elicited from him that fact in his examination. Nothing to the contrary of such an agency ap-

peared in the evidence. He acted on the line of such an agency, for he paid over to the plaintiff a part of the proceeds of the cotton. The defendant sought to prove by him, and did prove, so far as his testimony could establish it in opposition to that of the plaintiff, that payment was made in full. One of the pleas was payment, and the only payments attempted to be proven in support of this plea were those which were made by him. In most cases the jury must not only hear the testimony, but reason upon it. They are not restricted to its letter, but may follow out its indications, and, from one fact infer another. Sometimes the absence of evidence to a negative may be a reason for trusting to even slight indications of the affirmative. The jury must, in civil cases, at least, be allowed due scope for the reasoning faculty. A verdict is not the mere reflex of what truth there is in the testimony; it is compounded of evidence, law and logic.

In respect to payments made to the plaintiff, he gave an account of them differing in amount, considerably, from that given by the defendant's witness. He undertook to specify accurately every payment which he had received, and the jury evidently believed him. It was their right to do so.

Judgment affirmed.